IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 18-576-2 |
| | : | |
| JARRETT COBB | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                         August 3, 2022

We sentenced Jarrett Cobb to seventy months' incarceration in March 2020 for his guilty plea to a role in a drug distribution conspiracy knowing of, and relying upon, the detailed presentence investigation report detailing his mother's health, caregivers, and family members. We sentenced him at the lowest end of the guidelines range after granting him a safety valve to avoid the mandatory minimum ten-year sentence. He described the several persons available to care for his mother and her illnesses. Mr. Cobb returns today seeking a reduction of sentence and home confinement arguing he has become the sole caregiver for his mother who continues to suffer from the same ailments, but which are now propounded by her son's absence following his conviction for a drug trafficking conspiracy. Mr. Cobb offers no extraordinary or compelling reasons to reduce his sentence. We also find the sentencing factors set by Congress do not favor reducing his sentence. We are not authorized to grant him home confinement. We commend Mr. Cobb on his hard work while incarcerated but find no grounds today to reduce our considered sentence from March 2020.

I.      Background

Our grand jury indicted Jarrett Cobb on November 13, 2019 charging: (1) conspiracy to knowingly and intentionally distribute controlled substances, including 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of cocaine; (2) knowingly and intentionally distributing and aiding and abetting the distribution of fifty grams or more (approximately 446.4 grams) of methamphetamine on or about May 18, 2018; and (3) knowingly and intentionally distributing and aiding and abetting the distribution of fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine.[1] He faced a mandatory minimum sentence of ten years if convicted.

Mr. Cobb pleaded guilty under a plea agreement on November 22, 2019 to three charges: the lesser included offense of conspiracy to distribute fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of cocaine; distribution and aiding and abetting distribution of fifty grams or more (446.4 grams) of methamphetamine; and distribution and aiding and abetting the distribution of fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine.[2]

We scheduled sentencing for March 13, 2020. We studied the presentence investigation report approved by Mr. Cobb at his sentencing. Our officer and counsel agreed to the suggested Guideline range of seventy to eighty-seven months after applying Congress's safety valve under 18 U.S.C. § 3553(f) allowing us to sentence below the mandatory minimum of ten years. We agreed with the recommendation. We also learned about Mr. Cobb's family including his mother's health and his family members before and during our sentencing hearing: Mr. Cobb is

2

the only child born to his father and mother during their marriage; Mr. Cobb has two stepbrothers but only one is presently living; his mother has various medical conditions; and Epic Health Services employed Mr. Cobb as her caregiver at the time of the charged offenses.[3]

We considered the facts available to us, including his mother's medical conditions and need for care, when sentencing Mr. Cobb on March 13, 2020 to seventy months in custody of the Federal Bureau of Prisons (the lowest sentence in the agreed Guidelines range) followed by three years of supervised release.[4] Mr. Cobb is presently housed at Allenwood Low Security Correctional Institution.[5] He has been incarcerated since March 26, 2019 and is set to be released on July 2, 2023.[6]

## II. Analysis

Mr. Cobb now moves for compassionate release.[7] He argues he is the only caregiver for his ailing mother who requires continuous full-time care constituting extraordinary and compelling reasons for a reduction in his sentence.[8] Mr. Cobb now again informs of his mother's medical conditions and her need for a caregiver.[9] He tells us his mother has Stage IV chronic kidney disease, hypertension, hyperparathyroidism, aortic valve regurgitation, edema, osteoarthritis, and gait instability with limited mobility due to a stroke.[10] Mr. Cobb tells us his mother has two siblings, one in California and one in Delaware.[11] He also informs us his mother presently receives care from a caregiver through Frans Stay at Home Health Care, LLC.[12] But he tells us the care is insufficient because she requires more than eight hours of care per day, which is all Frans Stay at Home Health Care is providing.[13] He supports his assertions with two letters from his mother's physicians explaining her current medical condition.[14]

He also argues the sentencing factors provided by Congress in 18 U.S.C. § 3553(a) weigh in favor of a reduction in his sentence.[15] Mr. Cobb also requests we move him to home confinement.[16]

Congress allows us to grant compassionate release if Mr. Cobb: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;" (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[17] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[18] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[19] Mr. Cobb "bears the burden of proving that extraordinary and compelling reasons exist."[20]

### A.  Mr. Cobb exhausted his administrative remedies.

Congress requires an incarcerated person to exhaust his administrative remedies before seeking compassionate release from the Court.[21] Our Court of Appeals requires strict compliance with the exhaustion requirement.[22] Mr. Cobb submitted a request for compassionate release "and/or [h]ome [c]onfinement" to the Warden on April 8, 2022, and the Warden denied the request on April 26, 2022.[23] Mr. Cobb exhausted his administrative remedies.

### B.  Mr. Cobb fails to show extraordinary and compelling reasons warrant a reduction in his sentence.

Mr. Cobb argues extraordinary and compelling reasons warrant a sentence reduction due to his mother's ailing health and his mother requiring his care.[24] He also requests we move him to home confinement.[25] We disagree he has demonstrated extraordinary and compelling reasons

4

for a sentence reduction, and we lack authority to move him to home confinement. We must deny his motion.

Mr. Cobb argues we must reduce his sentence because his mother requires full-time care, and he is the only one who can provide it. We knew of and considered Mr. Cobb's mother's health conditions and Mr. Cobb's employment as her full-time caregiver when imposing Mr. Cobb's sentence.[26] Mr. Cobb reminds us his mother has Stage IV chronic kidney disease, hypertension, hyperparathyroidism, aortic valve regurgitation, edema, osteoarthritis, and gait instability with limited mobility due to a stroke.[27] He tells us she requires continuous, twenty-four-hour care.[28] Mr. Cobb asserts he is the only one who can care for her because his mother's other son is deceased, his aunt (his mother's sister) lives in Los Angeles, and his uncle (his mother's brother) lives in Newark, Delaware.[29] He reports the "distance [of his aunt and uncle] prevents continuous care for [his mother]." But Mr. Cobb also admits his mother receives care daily. He reports his mother currently has "minimal care provided by non-family individuals from Frans Stay at Home Care, LLC who provides only 8 hours of daily care leaving approximately 16 hours a day for no available care."[30] Frans Stay at Home Care, LLC offered Mr. Cobb employment should he be released to care for his mother fifty-six hours per week.[31] He tells us he will provide her care for the other hours not currently covered as well.[32]

Mr. Cobb does not address his other stepbrother who lives in Conshohocken, Pennsylvania despite informing our probation officer about his stepbrother before sentencing. Mr. Cobb also mentioned someone he refers to as his "godbrother" at the time of sentencing. He similarly now does not mention his "godbrother" in his briefing. And Mr. Cobb previously informed our officer he intended to live in Florida upon his release from prison despite then

being his mother's full-time caregiver which he now argues is the reason he should be granted compassionate release.

The Sentencing Commission instructs extraordinary and compelling reasons to reduce a sentence exist in certain family circumstances, including: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [or] (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."[33] While not binding, we consider this policy statement to interpret the meaning of "extraordinary and compelling" in these circumstances.[34] By its plain text, the policy statement only extends to caring for a defendant's minor child(ren) or an incapacitated spouse when the defendant is the only one available to provide the care.[35] And it is true "[m]any . . . inmates have aging and sick parents [and] [s]uch circumstance is not extraordinary."[36] But some judges have found a defendant may establish "extraordinary and compelling" reasons to reduce his sentence by showing he is the only caregiver available for an incapacitated close family member like a parent.[37] Even assuming being the sole caregiver available to care for an ailing parent qualifies as an extraordinary and compelling reason to reduce a sentence, Mr. Cobb fails to establish his mother is incapacitated or he is the only one available to care for his mother.[38]

Judge Conti recently found "'incapacitated' means 'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.'"[39] Judge Conti found the petitioner failed to establish his mother is incapacitated because he did not "show that it is more likely than not that his mother is completely disabled, cannot carry on *any* self-care, or is confined to a bed or chair."[40]

6

Mr. Cobb fails to establish his mother is incapacitated. Mr. Cobb argues his mother requires "full-time care" and provides two letters from his mother's physicians dated in February 2022.[41] Dr. Kelly Heiland, at Mr. Cobb's mother's request, "generate[d] this letter to state [Mr. Cobb's mother's] underlying medical conditions as well as her reliance on family to help her get medications and to transport necessary to medical appointments."[42] Dr. Heiland confirmed Mr. Cobb's mother has "chronic kidney disease stage four, hypertension, secondary hyperparathyroidism, hypokalemia, and edema."[43] Dr. Heiland does not opine on the amount of care or assistance Mr. Cobb's mother requires, if any. Dr. Megan Madsen also wrote a letter.[44] Dr. Madsen confirms Mr. Cobb's mother "has ongoing medical issues which require regular care, specialist evaluations and medication treatment including hypertension, chronic kidney disease, esophageal reflux, diverticulosis, aortic valve regurgitation, gait instability, osteoarthritis with chronic pain, anxiety, and depression."[45] Dr. Madsen continues: "[T]he stress of the current situation for her family has directly lead [sic] to worsening of some of this [sic] issues, including her anxiety and depression symptoms."[46] Dr. Madsen similarly does not provide an opinion on the level or amount of care and assistance Mr. Cobb's mother needs at home, if any.[47] While the doctors confirm Mr. Cobb's mother has a variety of health conditions needing routine medical treatment, we have no evidence Mr. Cobb's mother is incapacitated requiring continuous care for twenty-four hours per day. We do not know if Mr. Cobb's mother is completely disabled, unable to carry on *any* self-care, or is confined to a bed or chair. Mr. Cobb fails to show his mother is incapacitated.

Mr. Cobb also fails to establish he is the only available person to care for his mother. Mr. Cobb admits his mother currently receives care from Frans Stay at Home Care, LLC.[48] He argues his mother does not receive *enough* care because the caregiver only comes eight hours per

7

day.[49] But Mr. Cobb fails to substantiate his mother needs any, let alone continuous, care from a caregiver. And Mr. Cobb admits his mother has a sister and brother who could care for her but for the distance between them.[50] This argument is also insufficient to establish he is his mother's only available caregiver.[51] Mr. Cobb lastly does not address his stepbrother who lives in Conshohocken in this District or his "godbrother" in his briefing.[52] Mr. Cobb fails to show he is the only available caregiver for his mother or her conditions render her incapacitated and in need of continuous care twenty-four hours per day.

We next address Mr. Cobb's request for home confinement. We lack authority to move Mr. Cobb to home confinement because the Federal Bureau of Prisons has sole authority to make housing decisions for federal inmates.[53] Mr. Cobb appears to acknowledge we lack authority to require the Bureau to move him to home confinement but argues we can use home confinement to reduce his sentence.[54] Mr. Cobb has not shown extraordinary and compelling reasons allowing us to reduce his sentence. We deny his request for home confinement because we lack authority and he has not shown grounds to reduce his sentence.

### C. Congress's sentencing factors do not support reducing Mr. Cobb's sentence.

We do not find a basis to reduce the sentence imposed after applying the factors provided by Congress even if Mr. Cobb could show extraordinary and compelling reasons. Congress authorizes us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[55] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[56] Congress in section 3553(a) requires we consider, among other things, the nature and circumstances of Mr. Cobb's offenses and his history and characteristics; the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and the need

8

for the sentence imposed including to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.[57]

Mr. Cobb argues the sentencing factors now weigh in favor of release because: (1) he has grown and gained maturity; (2) he participates in the "BOP evidence-based recidivism reduction programming"; (3) he works as a compound orderly; (4) he participates in alcohol and drug treatment programming; (5) he participates in occupation-based classes; (6) he is remorseful for his crimes; (7) he has a sound release plan including employment upon release; (8) he has served forty months of his seventy-month sentence; (9) the Bureau of Prison's PATTERN assessment indicates he is at a medium risk of recidivism;[58] (10) he previously successfully completed state probation before the crime for which he is incarcerated; and (11) his sentence has been more punitive than we had anticipated because of the COVID-19 pandemic.[59] We disagree these reasons change our weighing of Congress's factors in favor of a reduced sentence.

Mr. Cobb admitted his role in a drug conspiracy selling large quantities of harmful narcotics in our District. This sentence follows his second drug distribution offense showing an uptick in the severity of his drug crimes as he joined a conspiracy and distributed large quantities of drugs to which he pleaded guilty in this offense. Mr. Cobb's crimes are serious. He faced a mandatory minimum sentence of ten years imprisonment with a maximum sentence of life imprisonment for the crimes charged.[60] We considered Mr. Cobb's circumstances, crimes, and guideline sentence when we sentenced Mr. Cobb to seventy months in the Bureau of Prisons's custody at the low end of the guideline range.[61] We commend Mr. Cobb for his rehabilitative efforts while incarcerated. Mr. Cobb demonstrates a desire to better himself by using helpful

9

programming while incarcerated. His efforts affirm our purposes in considering a variety of factors when sentencing Mr. Cobb.

But Mr. Cobb's rehabilitation efforts are not sufficient to weigh the 3553(a) factors in favor of release.[62] In fact, his Bureau of Prison PATTERN score indicates he is at a medium risk of reoffending.[63] And Mr. Cobb has only served approximately thirty-nine months of his seventy-month sentence.[64] Mr. Cobb's presently served time is insufficient to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment for his offense, to afford adequate deterrence to criminal conduct, and to protect the public from his further crimes.[65] Mr. Cobb's sentence of seventy months remains sufficient but not greater than necessary to accomplish the goals of sentencing.

## III. Conclusion

Mr. Cobb does not present an extraordinary and compelling reason for compassionate release. Congress's sentencing factors do not weigh in favor of a sentence reduction even if we could find an extraordinary and compelling reason for release today. We deny Mr. Cobb's motion for compassionate release and his request for transfer to home confinement.

---

[1] ECF Doc. No. 185 (Second Superseding Indictment); *see also* ECF Doc. No. 24 (superseding indictment filed on March 20, 2019 charging Mr. Cobb with same counts).

[2] ECF Doc. No. 231 (plea agreement); *see also* ECF Doc. No. 233 at 1 n.1 (United States plea memorandum explaining Mr. Cobb pleaded guilty to charges set forth in second superseding indictment, which are the same as those set forth in the first superseding indictment but numbered as different counts).

[3] Presentence Investigation Report.

[4] ECF Doc. No. 343 at 3–4.

---

[5] ECF Doc. No. 488 at 2; *see also* Federal Bureau of Prisons Inmate Locator, Jarrett Cobb, Inmate number 77137-066, available at https://www.bop.gov/inmateloc/ (indicating Mr. Cobb is presently housed at Allenwood Low FCI with a release date of July 2, 2023) (last visited Aug. 3, 2022).

[6] BOP Inmate Locator, *supra* n.10.

[7] ECF Doc. No. 488.

[8] *Id.* at 10.

[9] ECF Doc. No. 488 at 11.

[10] *Id.* at 10.

[11] *Id.* at 11.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 35–36.

[15] *Id.* at 12–22.

[16] *Id.* at 21.

[17] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[18] *Andrews*, 12 F.4th at 259–60.

[19] 18 U.S.C. § 3582(c)(1)(A)(i).

[20] *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[21] *See Andrews*, 12 F.4th at 258.

[22] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[23] ECF Doc. No. 488 at 9, 25–33.

[24] *Id.* at 10–12.

[25] *Id.* at 21.

[26] *See, e.g.*, ECF Doc. No. 488 at 10 (citing presentencing investigation report as containing information regarding his mother's conditions and his employment as her full-time caregiver); *see also* Presentence Investigation Report.

[27] ECF Doc. No. 488 at 10; *see also id.* at 35–36 (letters from mother's physicians regarding conditions).

[28] *Id.* at 10.

[29] *Id.* at 10–11.

[30] *Id.* at 11.

[31] *Id.* at 12; *see also id.* at 34 (offer letter from Frans Stay at Home Care LLC).

[32] *Id.* at 12.

[33] Sent'g Guidelines Manual § 1B1.13 cmt. n.1.

[34] *United States v. Briggs*, No. 96-336-1, 2022 WL 159601, at *2 (E.D. Pa. Jan. 18, 2022) ("It is now clear that the existing Sentencing Commission Policy Statement for § 3582(c)(1)(A) contained in the Commentary to U.S.S.G. § 1B1.13, is not binding on the courts where compassionate release motions are made by the defendants themselves. Nevertheless, this Policy Statement 'still sheds light on the meaning of extraordinary and compelling reasons,' given that 'Congress legislates against the backdrop of existing law.'" Hence, while the courts are free to interpret the meaning of extraordinary and compelling' for themselves, the existing Policy Statement may properly be considered for guidance in this inquiry.") (internal quotations omitted).

[35] *Id.* ("Although Briggs avers that his mother suffers from 'serious health conditions' which purportedly place her in imminent threat of demise without a primary caregiver such that she needs 'her son's assistance for day to day living,' a parent is neither a child nor a spouse."); *United States v. Ellsworth-Daway*, No. 17-506, 2021 WL 2823081, at *2 (E.D. Pa. July 7, 2021) ("There is no provision in the guidelines for an inmate who claims that he should be released as the only available caregiver for an ailing parent. Courts have generally denied release in circumstances comparable to those presented here."); *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

[36] *Ingram*, 2019 WL 3162305, at *2

---

[37] *See, e.g.*, *United States v. Jones*, No. 13-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (being sole caregiver for incapacitated parent may constitute extraordinary and compelling reason to reduce sentence but finding defendant failed to show incapacitation or defendant was sole caregiver available).

[38] *United States v. Coles*, No. 21-1715, 2022 WL 1552123, at *2 (3d Cir. May 17, 2022) (holding Judge McHugh did not abuse his discretion in denying compassionate release motion when finding defendant did not show extraordinary and compelling reasons in part because defendant failed to show his mother required immediate care or he was the only possible caregiver); *United States v. Wilkerson*, No. 19-15-5, 2022 WL 2869267, at *2 (E.D. Pa. July 20, 2022) (no extraordinary and compelling circumstances because the need to care for elderly or ill parents is not extraordinary and defendant failed to show he is the only person available to assist parent); *United States v. Rhodes*, No. 15-23, 2021 WL 4460031, at *6 (W.D. Pa. Sept. 29, 2021) (no extraordinary and compelling reasons when defendant's sister available to care for mother even though she did not live close to mother); *Ellsworth-Daway*, 2021 WL 2823081, at *3 (no extraordinary and compelling reasons because defendant failed to present any evidence he is only one able to care for mother); *Jones*, 2021 WL 1060218, at *10 (no extraordinary and compelling reasons because defendant fails to show his mother is incapacitated or defendant only one available to care for mother).

Our reasoning today is consistent with our earlier analysis of caretaker grounds for compassionate release. *See United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *4–6 (E.D. Pa. Nov. 30, 2020) (no extraordinary and compelling when no strong evidence petitioner is the "*sole* individual capable of caring for the parent"); *see also United States v. Irizzary*, No. 14-652-13, 2021 WL 735779, at *7–8 (E.D. Pa. Feb. 25, 2021) (finding no extraordinary and compelling reasons when other individuals available to care for sibling).

[39] *Jones*, 2021 WL 1060218, at *10 (internal quotation and further citation omitted).

[40] *Id.* (emphasis in original).

[41] ECF Doc. No. 488 at 10, 35–36.

[42] *Id.* at 35.

[43] *Id.*

[44] *Id.* at 36.

[45] *Id.*

[46] *Id.*

[47] *Id.*

13

---

[48] *Id.* at 11.

[49] *Id.*

[50] *Id.*

[51] *Rhodes*, 2021 WL 4460031, at *6 ("Similarly, the 'family care' policy does not apply where other family members are available to provide care. In this case, the record reflects that Rhodes' sister is available to provide care for his mother, although she does not live close by her mother."); *see also Irizzary*, 2021 WL 735779, at *8 (defendant not sole caregiver merely because his wife and kids were too busy to care for brother but not "incapacitated or otherwise unable" to care for him); *Moore*, 2020 WL 7024245, at *5 (defendant failed to show sole caregiver when sister and cousin who lived forty minutes away stated they are overwhelmed but did not show "they are somehow incapacitated or physically unable to care for" defendant's mother).

[52] Mr. Cobb argues his mother's "other son . . . was murdered" in 2011. ECF Doc. No. 488 at 10. Our officer confirmed this fact in the presentence investigation report. But we do not know if Mr. Cobb's other stepbrother is Mr. Cobb's mother's son, or his deceased father's son. Mr. Cobb's stepbrother does not have the last name Cobb (as Mr. Cobb's biological father) or his mother's last name (Foster). Even if his stepbrother in Conshohocken is not related to his mother, Mr. Cobb still fails to meet extraordinary and compelling reasons.

[53] *See United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (the Bureau of Prisons has the sole authority to place a prisoner on home confinement); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive discretion" of the Bureau of Prisons); *United States v. Milchin*, No. 17-284, 2022 WL 196279, at *1 n.1 (E.D. Pa. Jan. 21, 2022) (same); *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (Congress in the CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief. Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'").

[54] ECF Doc. No. 488 at 21.

[55] 18 U.S.C. § 3582(c)(1)(A)(i).

[56] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *6 (W.D. Pa. Dec. 9, 2021) (further citation omitted).

[57] Section 3553(a) provides in relevant part:

   (1) the nature and circumstances of the offense and the history and characteristics of
       the defendant;
   (2) the need for the sentence imposed--

14

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range establish for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission …. and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced . . .

    ****

(5) any pertinent policy statement – (A) issued by the Sentencing Commission …; and (B) that … is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

[58] As we previously explained earlier this year, Attorney General Barr implemented PATTERN (Prisoner Assessment Tool and Targeting Estimated Risk and Needs) in response to the First Step Act. *United States v. Brunetti*, No. 94-127-13, 2022 WL 685535, at *9 (E.D. Pa. Mar. 8, 2022), *aff'd*, No. 22-1545, 2022 WL 2662046 (3d Cir. July 11, 2022). PATTERN is designed to "predict the likelihood of general and violent recidivism for all [Bureau of Prison] inmates three years post release" by assessing fifteen variables. *Id.* (alteration in original; internal quotations and further citations omitted).

[59] ECF Doc. No. 488 at 12–21.

[60] ECF Doc. No. 231 at 3.

[61] *See, e.g.*, ECF Doc. No. 319 (United States suggesting guideline range of seventy to eighty-seven months of incarceration); ECF Doc. No. 320 (defendant suggesting the same); Presentence Report (confirming the same).

---

[62] *See, e.g.*, *Brunetti*, 2022 WL 2662046, at *1 ("In weighing the § 3553(a) sentencing factors, the District Court recognized Brunetti's rehabilitative efforts and low risk of recidivism but concluded that such were outweighed by the need for his sentence to reflect the seriousness of his offenses and promote respect for the law. These were relevant considerations and we cannot say that the District Court erred in relying on them.") (internal citations omitted); *United States v. Stanton*, No. 11-473-1, 2022 WL 2828988, at *3 (E.D. Pa. July 20, 2022); *United States v. Hoover*, No. 18-188, 2022 WL 2826421, at *10 (W.D. Pa. July 20, 2022); *United States v. Macon*, No. 14-50, 2022 WL 2816896, at *3–4 (D.N.J. July 19, 2022).

[63] ECF Doc. No. 488 at 37 (indicating medium risk of recidivism in general and violent level).

[64] Mr. Cobb submits a report, "Sentence Monitoring Computation Data," dated April 6, 2022. ECF Doc. No. 488 at 41. It provides we sentenced him to seventy months in Bureau of Prisons custody with the computation date beginning on March 13, 2020. It indicates the "expiration full term date" of his sentence is January 24, 2025. *Id.* But his projected statutory release date is June 4, 2024. *Id.* It also provides he had 353 days of time-served credit from his pretrial detention and 234 days of "earned and projected" good time credits. *Id.* As of April 6, 2022, it calculates Mr. Cobb has served three years and twelve days of his sentence. *Id.* It projects his release date as July 2, 2023. *Id.* And it indicates he has served 51.9% of his full-term sentence and 58.3% of his statutory term. *Id.*

[65] *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").